## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

In re:

| | |
|---|---|
| **DARRALL A. GRIFFIN,** | **CHAPTER 13** |
| **DEBTOR.** | **CASE NO. 16-10580-RGM** |

**WILMINGTON SAVINGS FUND SOCIETY, FSB,
D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY
BUT AS TRUSTEE FOR PRETIUM MORTGAGE
ACQUISITION TRUST,**

**MOVANT,**

vs.

**DARRALL A. GRIFFIN
and THOMAS P. GORMAN, TRUSTEE,**

**RESPONDENTS.**

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (REAL PROPERTY LOCATED AT 5672 TOWER HILL CIRCLE, ALEXANDRIA, VA 22315)

**NOTICE**

**YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE.  (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

**TO:**    **DARRALL A. GRIFFIN, DEBTOR
        THOMAS P. GORMAN, TRUSTEE
IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT.  UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FOURTEEN (14) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.**

**IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD.**

**THE PRELIMINARY HEARING IS SCHEDULED TO BE HELD ON SEPTEMBER 7, 2016 AT 9:30 A.M. IN THE U.S. BANKRUPTCY COURT, ALEXANDRIA DIVISION, 200 S. WASHINGTON STREET, ALEXANDRIA, VA 22314, COURTROOM I, 2ND FLOOR.**

Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay with respect to certain real property of the Debtor having an address of **5672 Tower Hill Circle, Alexandria, VA 22315** (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below), and

Brandon R. Jordan, Esquire
Counsel for Movant
Samuel I White, P.C.
Bar No. 72170
1804 Staples Mill Road,
Suite 200
Richmond, VA 23230
(804) 290-4290
File No. 36835

applicable law, including but not limited to the right to foreclose. In further support of this Motion, Movant respectfully states:

1.      This Court has Jurisdiction over this proceeding pursuant to 28 U.S.C. Sections 157 and 1334 and 11 U.S.C. 362(d), and that this matter is a core proceeding.

2.      A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on February 22, 2016.

3.      A hearing to consider confirmation of the Chapter 13 Plan of the Debtor is scheduled for May 19, 2016.

4.      The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $915,000.00 (the "Note").  A copy of the Note is attached hereto as Exhibit A.

5.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Deed of Trust are secured by the Property and the other collateral described in the Deed of Trust. The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of the Clerk of the County of Fairfax, Virginia. A copy of the recorded Deed of Trust is attached hereto as Exhibit B.

6.      The legal description of the Property is:

**LOT NUMBER THIRTEEN (13), IN A SUBDIVISION KNOWN AS "KINGSTOWNE, SECTION 42 ", AS THE SAME IS DULY DEDICATED, PLATTED AND RECORDED IN A DEED OF SUBDIVISION AND EASEMENT IN DEED BOOK 12583 AT PAGE 1140 AMONG THE LAND RECORDS OF FAIRFAX COUNTY, VIRGINIA.**

7.      Rushmore Loan Management Services, LLC is servicing agent for the Movant.

8.      As of August 8, 2016, the unpaid principal balance due is $949,093.14 and the approximate outstanding amount of Obligations less any partial payments or suspense balance is $1,053,534.41.

9.      The following chart sets forth the number and amount of post-petition payments due pursuant to the terms of the Note that have been missed by the Debtor as of August 8, 2016:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 6 | 03/01/2016 | 08/01/2016 | $4,631.15 | $27,786.90 |
| Less post-petition partial payments (suspense balance): | | | | ($3,851.50) |
| | | | **Total:** | **$23,935.40** |

10.     As of August 8, 2016, the total post-petition arrearage/delinquency is $24,654.40, consisting of (i) the foregoing total of missed post-petition payments in the amount of $23,935.40, plus (ii) the following fees:

| Fee Description | Amount |
| --- | --- |
| BK-Plan Review | $300.00 |
| Inspection Fees | $69.00 |
| BK- Proof of Claim | $350.00 |

11.     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $1,026.00 in legal fees and costs.

12.     The estimated value of the Property is $729,050.00. The basis for such valuation is: Tax Assessment, a copy of which is attached hereto as Exhibit C.

13.     Cause exists for relief from the automatic stay for the following reasons:

    i.      Movant's interest in the Property is not adequately protected.

    ii.     Post-Petition payments have not been made to Movant.

    iii.    Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay for all purposes allowed by applicable law, the Note, and the Deed of Trust, including but not limited to allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.      For such other relief as the Court deems proper.

Movant further requests that upon entry of an order granting relief from stay, it be exempted from further compliance with Fed. Rule Bankr. P. 3002.1 in the instant bankruptcy case.

Dated: August 12, 2016

WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST

By: **/s/ BRANDON R. JORDAN**
Eric D. White, Esquire, Bar No. 21346
Michael T. Freeman, Esquire, Bar No. 65460
Brandon R. Jordan, Esquire, Bar No. 72170
Johnie R. Muncy, Esquire, Bar No. 73248
Nisha R. Patel, Esquire, Bar No. 83302
Douglas S. Rubin, Esquire, Bar No. 84393
Samuel I. White, P.C.
1804 Staples Mill Road, Suite 200
Richmond, VA 23230
Tel.: (804) 290-4290
Fax: (804) 290-4298
bjordan@siwpc.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion was served by first class mail postage prepaid or email this 12th day of August, 2016 on all necessary parties including Thomas P. Gorman, Trustee, 300 N. Washington St., Ste. 400, Alexandria, VA 22314; Tommy Andrews, Jr., Counsel for Debtor, 122 North Alfred Street, Alexandria, VA 22314; and Darrall A. Griffin, Debtor, 5672 Tower Hill Cir., Alexandria, VA 22315-4000.

**/s/ BRANDON R. JORDAN**
Brandon R. Jordan, Esquire
Samuel I. White, P. C.

# INTEREST ONLY/ADJUSTABLE RATE NOTE

(Six-Month LIBOR Index (As Published In *The Wall Street Journal*)-Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

September 25, 2006          BALTIMORE                    Maryland

[Date]                        [City]                       [State]

5672 TOWER HILL CIRCLE  , ALEXANDRIA, VA 22315
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  915,000.00          (this amount is called "Principal"), plus interest, to the order of Lender.   Lender is

**MORTGAGE LENDERS NETWORK USA, INC.**
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on the unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        **8.0500**      %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment on the first day of every month beginning on **November 1, 2006**    . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid Principal balance of this Note. Thereafter, I will pay Principal and  interest by making a payment every month as provided below.

I will make my monthly payments of Principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both  Principal and interest, it will be applied to interest before Principal. If, on **October 1, 2036**      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**10 RESEARCH PARKWAY, WALLINGFORD, CT  06492**
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

My monthly payments will be in the amount of U.S. $      6,138.13              before the first month after the first Change Date. My payment will remain interest only until the First Principal and interest Due Date, but may adjust the month after each scheduled Change Date that occurs before then.  The amount of my payment on the First Principal and Interest Due Date and thereafter will be in an amount sufficient to repay the Principal and interest, at the rate determined and adjusted as described in Section 4 of this Note, in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

VIRGINIA INTEREST ONLY/ADJUSTABLE RATE NOTE - SIX-MONTH LIBOR INDEX - Single Family

Initials:

MIN-

Represents Redacted Information

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **October 1, 2008** , and the adjustable interest rate I will pay may change on that day every sixth month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London Market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and Five Hundredths** percentage points (**5.05000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. Until the First Principal and Interest Due Date, my monthly payment will remain interest only and will be based upon the interest rate effective at each Change Date.

On the First Principal and Interest Due Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on the Interest Rate**

The interest rate I am required to pay at the first Change Date will not be greater than **11.0500** % or less than **8.0500** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.0000** %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.0500** %. **\* My interest rate will never be less than 8.05%**

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both Principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be **November 1, 2011** .

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is know as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.\* The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial

Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of Principal and interest, my partial Prepayment may reduce the amount on my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**\* Except as set forth in the attached Prepayment Penalty Addendum.**

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Seven** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will **5.0000** % of my overdue payment of interest, during the period when my payment is interest only, and of Principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 (A) above or at a different address if I am given notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below).  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage,  Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.  As** used in Section 18 of this Security Instrument.  "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond or deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without the Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay theses sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:**

_____(Seal)          _____(Seal)
DARRALL A GRIFFIN         -Borrower                                    -Borrower

_____(Seal)          _____(Seal)
            -Borrower                                    -Borrower

_____(Seal)          _____(Seal)
            -Borrower                                    -Borrower

_____(Seal)          _____(Seal)
            -Borrower                                    -Borrower

*[Sign Original Only]*

This is to certify that this is the Note described in and secured by a Deed of Trust dated **September 25, 2006**
on the Property located in      Alexandria                    ,Virginia.

My Commission Expires:                    Lara Van Hook _____

        Feb. 28, 2009      Notary Public

4280-VA5   11/04                    Page 5 of 5                    Initials: _____

PAY TO THE ORDER OF:

WITHOUT RECOURSE
By: MORTGAGE LENDERS NETWORK USA, INC.

LAUREN CAMPBELL
CLOSER

PAY TO THE ORDER OF:
EMAX FINANCIAL GROUP, LLC
WITHOUT RECOURSE
By: MORTGAGE LENDERS NETWORK USA, INC.

LAUREN CAMPBELL
CLOSER

## PREPAYMENT PENALTY NOTE ADDENDUM

For a valuable consideration, receipt of which is hereby acknowledged the undersigned agree that certain Promissory Note of even date to which this Addendum is attached, shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said promissory note or the Deed of Trust, Mortgage, Real Estate Mortgage, Security Deed (Security Instrument) securing same.

This Addendum is attached to and made a part of that certain Promissory Note given by
**DARRALL A GRIFFIN**

(Borrower) to

**MORTGAGE LENDERS NETWORK USA, INC.**
(Lender), dated **September 25, 2006**, which Note is in the principal amount of
$  **915,000.00**           **PREPAYMENT PENALTY**

After **Two              2      full year(s)**     from the date hereof, maker may pre-pay, without penalty, the outstanding principal balance.  In the event maker prepays in full the outstanding principal balance and accrued interest during the first **Two
2        full year(s)** from the date hereof, maker shall pay in addition to such prepayment a penalty in an amount equal to a percentage of the principal portion of the amount so pre-paid in accordance with the following:

    If paid during the first year from the date hereof, Two percent
    (    2.0000   %) of the portion of such prepayment equal to the principal
    amount so prepaid.

    If paid during the second year from the date hereof, Two percent
    (    2.0000   %) of the portion of such prepayment equal to the principal
    amount so prepaid.

Holder shall apply any prepayment first to reduce any interest and charges owing at the time of such prepayment and then to reduce the amount of principal owed under this Note, provided that such balance shall be applied to the principal in reverse order of the due date of each payment and shall not otherwise affect or delay the due date of the next payment under the Note.

| | | | |
|---|---|---|---|
| _Darrall A. Griffin_ | 9/25/2006 | | 9/25/2006 |
| Borrower | Date | Borrower | Date |
| **DARRALL A GRIFFIN** | | | |
| | 9/25/2006 | | 9/25/2006 |
| Borrower | Date | Borrower | Date |

prepaypn 4/2/97 rev 7/99 10/99

---

### ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS
ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

---

POOL:        0        LOAN ID:    ▮▮▮▮    ▮▮▮▮▮▮▮▮

NOTE DATE:    9/25/2006    LOAN AMOUNT:    $915,000.00

BORROWER NAME:  DARRALL A GRIFFIN

PROPERTY ADDRESS:   5672 TOWER HILL CIRCLE, ALEXANDRIA, VA  22315

---

PAY TO THE ORDER OF

Residential Funding Company, LLC fka Residential Funding Corporation

WITHOUT RECOURSE

Emax Financial Group, Llc

By: _____

Name: John Hagebock

Title: Assistant Vice President


PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC
By _____
Judy Faber, Vice President

PAY TO THE ORDER OF
WELLS FARGO BANK, N.A., AS TRUSTEE FOR
STANWICH MORTGAGE LOAN TRUST, SERIES
2009-2 ASSET BACKED PASS-THROUGH
CERTIFICATES, WITHOUT RECOURSE
Residential Funding Company, LLC
By _____
Judy Faber, Vice President

 **GRIFFIN**

## ALLONGE TO PROMISSORY NOTE

**For Purposes of Further Endorsement of the Following Described Note, this Allonge is affixed and becomes a Permanent Part of said Note.**

**NOTE DATED: SEPTEMBER 25, 2006**
**LOAN AMOUNT: $915,000**
**BORROWER: DARRALL A GRIFFIN**
**ORIGINAL LENDER: MORTGAGE LENDERS NETWORK USA, INC.**

**PROPERTY: 5672 TOWER HILL CIRCLE**
**                ALEXANDRIA, VA  22315**

**PAY TO THE ORDER OF:**

**RESIDENTIAL FUNDING COMPANY LLC**

**WITHOUT RECOURSE**
**US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY LLC FKA RESIDENTIAL FUNDING ORPORATION ATTORNEY IN FACT**

**ALEXIS CLINTON**
**LIMITED SIGNING OFFICER**

(F) ████████████

Borrower Name:  DARRALL A GRIFFIN

████████████

Property Address: Property Address: 5672 TOWER HILL CIR, ALEXANDRIA, VA
22315

Loan Amount:  AMOUNT: $ 915,000.00

**ALLONGE TO NOTE**

**PAY TO THE ORDER OF:**

**CITIBANK, N.A. AS TRUSTEE FOR CMLTI ASSET TRUST**

WELLS FARGO BANK, N.A., AS TRUSTEE FOR STANWICH MORTGAGE LOAN
TRUST, SERIES 2009-2 ASSET-BACKED PASS-THROUGH CERTIFICATES
By Carrington Mortgage Services, LLC as Attorney-in-Fact

By: _____ Rob Petruska, Senior Vice President _____

Dated: 7/2/13

████████████████████████



## ALLONGE TO NOTE

Original Loan Amount: $915,000.00
Note Date:          09/25/2006
Borrower(s):        DARRALL A. GRIFFIN
Property Address:   5672 TOWER HILL CIRCLE
                    ALEXANDRIA, VA 22315

**PAY TO THE ORDER OF**

: _____

_____

_____

**WITHOUT RECOURSE**

CITIBANK, N.A. AS TRUSTEE FOR CMLTI ASSET TRUST

_____

**Loren Morris**
**Authorized Signatory of Fay Servicing, LLC, its Attorney in Fact**

[PREP] OTHERS\ALLONGE

BK 18798-0023        09/29/2006 12:11:03

VB Cover Sheet Version 2.0

Page 1 of 1

# Fairfax Land Records Cover Sheet

**Instrument(s)**
TRUST

**Grantor(s)**
GRIFFIN, DARRALL A_I_N

**Grantee(s)**
~~PROPERTY TITLE & ESCROW TR_F_T~~ Fuller, Gary

| Consideration | 915000 | | Consideration % | 100 | |
|---|---|---|---|---|---|
| Tax Exemption | None | | Amount Not Taxed | | |
| DEM Number | | | | | |
| Original Book | | | Original Page | ████████ | |
| Title Company | PROPERTY TITLE & ESCROW | | Title Case | | |
| Property Descr. | KINGSTOWNE, LOT 13, SECTION 42 | | | | |
| Certified | NO | Copies | 0 | Page Range | |



9/29/2006

Represents Redacted Information

Return To:
**MORTGAGE LENDERS NETWORK USA, INC.**

**213 COURT ST. MIDDLETOWN, CT 06457**

RPC/Parcel ID #:

Return to:
Property Title & Escrow, LLC
7008 Security Blvd., Suite 220
Baltimore, MD 21244
410-594-7474
Fax 410-594-7282

Prepared By:
**MORTGAGE LENDERS NETWORK USA, INC.**
**213 Court St. Middletown CT 06457**

——————————————— [Space Above This Line For Recording Data] ———————————————

# DEED OF TRUST

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by
**DARRALL A GRIFFIN**

Borrower (trustor), to ~~PROPERTY TITLE & ESCROW LLC~~ *Gary Fuller*        , as
~~7008 SECURITY BLVD. #220~~
~~BALTIMORE  MD 21244~~

                                                                        , as
Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

**VIRGINIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**        Form 3047 1/01

⬤ -6A(VA) (0507)

Page 1 of 15        Initials:

VMP Mortgage Solutions, Inc. (800)521-7291

RETURN TO: (BOX 3)
LANDAMERICA
(COMMONWEALTH/LAWYERS)
10513 JUDICIAL DRIVE,
FAIRFAX, VA. 22030
#200

**(A) "Security Instrument"** means this document, which is dated **September 25, 2006** , together with all Riders to this document.

**(B) "Borrower" is DARRALL A GRIFFIN**

Borrower is the trustor under this Security Instrument.

**(C) "Lender" is MORTGAGE LENDERS NETWORK USA, INC.**

Lender is a **corporation or association**
organized and existing under the laws of **Delaware**
Lender's address is **213 Court St. Middletown CT 06457**

**(D) "Trustee" is** ~~PROPERTY TITLE & ESCROW LLC~~ Mary Fullin

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is ~~7008 SECURITY BLVD. #220BALTIMORE MD 21244~~ 2746 Chainbridge Road "Trustee" is                                                         Vienna, VA 22181

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **September 25, 2006**
The Note states that Borrower owes Lender     **Nine Hundred Fifteen Thousand and No/100 ---------------------------------------------------** Dollars
(U.S. $     **915,000.00**    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 1, 2036** . The interest rate stated in the Note is **Eight and Five Hundredths**
percent (     **8.0500**   %).
If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in accordance with the attached Adjustable Rate Rider.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

Initials ___

-6A(VA) (0507)                    Page 2 of 16                    Form 3047 1/01

BK 18798-0026

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials: _____

-6A(VA) (0507)                          Page 3 of 15                          Form 3047  1/01

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY**          [Type of Recording Jurisdiction]
of **FAIRFAX**                                    [Name of Recording Jurisdiction]:
**SEE ATTACHED SCHEDULE A**

which currently has the address of
**5572 TOWER HILL CIRCLE**                                          [Street]
**ALEXANDRIA**                          [City/County], Virginia   **22315**      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such

Initials:



amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the

Initials: 

payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in



-6A(VA) (0607)                    Page 7 of 15                    Form 3047  1/01

connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was



-6A(VA) (0607)                          Page 8 of 15                          Initials: _____                 Form 3047  1/01

required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.


Initials: 

-6A(VA) (0607)                Page 9 of 15                          Form 3047  1/01

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.



Initials: ___

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this

Initials: _____

Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).



Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.**

BK 18798 0037

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

DARRALL A GRIFFIN

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

STATE OF VIRGINIA,                    Fairfax         County, ss:

The foregoing instrument was acknowledged before me this **September 25, 2006**         by
**DARRALL A GRIFFIN**

My Commission Expires:

Feb. 28, 2009

_Sara Van Hook_
Notary Public

-6A(VA) (0507)                    Page 15 of 15                    Initials _____        Form 3047  1/01

# INTEREST ONLY/ADJUSTABLE RATE RIDER

### (LIBOR Six-Month Index (As published in *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **25th** day of **September** **2006** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

**MORTGAGE LENDERS NETWORK USA, INC.**

(The " Lender") of the same date and covering the property described in the Security Instrument and located at:

**5672 TOWER HILL CIRCLE , ALEXANDRIA, VA 22315**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    The Note Provides for an initial interest rate of **8.0500** %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**
    The interest rate I pay may change on the **1st** day of **October , 2008** and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) – Rate Caps**

Form 4281-MU1    11/04                    Page 1 of 4                    Initials:



**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the 45 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give notice of this change.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
**Five and Five Hundredths**                                                                    percentage points
( **5.05000**                %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. Until the First Principal and Interest Due Date, my monthly payment will remain interest only and will be based upon the interest rate effective at each Change Date.

On the First Principal and Interest Due Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than
**11.0500**        % or less than        **8.0500**        %. thereafter, my interest rate will never be increased or decreased on any single Change Date by more than
**One**                                                                    percentage points
( **1.0000**                %) from the rate of interest I have been paying for the preceding   **6**
months. My interest rate will never be greater than        **14.0500**        %.
    • **My interest rate will never be less than 8.05%**
**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both Principal and Interest on this Note (the "First Principal and Interest Due Date") shall be **November 1, 2011**        .

Form 4281-MU2   11/04                    Page 2 of 4                    Initials:

*1 7*



**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Form 4281-MU3   11/04                          Page 3 of 4                          Initials:

BK 18798 0042

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
DARRALL A GRIFFIN              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Form 4281-MU4   11/04                 Page 4 of 4

19

BK 18798 0043

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **25th** day of **September 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **MORTGAGE LENDERS NETWORK USA, INC.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**5672 TOWER HILL CIRCLE  , ALEXANDRIA, VA 22315**

[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in **the covenants, conditions and restrictions in the declarations of KINGSTOWNE**

(the "Declaration"). The Property is a part of a planned unit development known as **KINGSTOWNE**

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01

Page 1 of 3    Initials:

-7R (0411)    VMP Mortgage Solutions, Inc. (800)521-7291

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials:

-7R (0411)                    Page 2 of 3                    Form 3150 1/01

BK 18798 0045

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
DARRALL A GRIFFIN                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

-7R (0411)                    Page 3 of 3                    Form 3150 1/01

22

BK 18798 0046

## Exhibit "A"

### Legal Description

LOT NUMBER THIRTEEN (13), IN A SUBDIVISION KNOWN AS "KINGSTOWNE, SECTION 42", AS THE SAME IS DULY DEDICATED, PLATTED AND RECORDED IN A DEED OF SUBDIVISION AND EASEMENT IN DEED BOOK 12583 AT PAGE 1140 AMONG THE LAND RECORDS OF FAIRFAX COUNTY, VIRGINIA.

09/29/2006
RECORDED FAIRFAX CO VA
TESTE:
CLERK

Investor Loan # _____

**After Recording Return To:**

_____

_____

_____

_____

This document was prepared by _____

_____ **[Space Above This Line For Recording Data]**_____

## LOAN MODIFICATION AGREEMENT (PI to PI - LOL)

Borrower:    **DARRALL A GRIFFIN**

Loan Number:    █████████

Property Address:    5672 TOWER HILL CIR
                         ALEXANDRIA     VA 22315

Mailing Address:    5672 TOWER HILL CIR
                         ALEXANDRIA     VA 22315

Carrington Mortgage Services, LLC, as servicer and authorized agent of WELLS FARGO BANK, N A , AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST SERIES 2009-2 ASSET BACKED PASS-THROUGH CERTIFICATES (the "Lender"), is offering you this Loan Modification Agreement ("Agreement"), dated 06/25/12 (the "Effective Date"), which modifies the term of your existing mortgage loan as described in detail below

### I. DEFINITIONS

**"Mortgage"** shall mean the mortgage, deed of trust, security deed or other security instrument encumbering the Property and corresponding to the above CMS Loan Number and recorded in the public records of FAIRFAX County

**"Note"** shall mean the note or other instrument of the same date and secured by the Mortgage

**"Property"** shall mean the real and personal property described in the Mortgage and located at:

    5672 TOWER HILL CIR
    ALEXANDRIA     VA 22315

**"Balloon Payment"** shall mean a final payment of the then-outstanding principal balance plus all earned interest remaining unpaid and due on the earlier of (i ) the date you sell the property securing the Mortgage, (ii ) the date you refinance the loan, (iii.) the date the loan is paid in full, or (iv ) the Maturity Date

**"Deferment"** shall mean any portion of the unpaid principal balance of the Note and Security Instrument that has been deferred, interest free.

**"Write Off"**, as referenced in this agreement, includes any of the following (i ) unpaid and deferred interest, (ii ) deferred principal, (iii.) escrow advances, (iv ) administrative fees, (v ) unpaid late fees, or other costs that have been forgiven and waived from your account and shall not be subject to any collection efforts by CMS.

For the purposes of this document "You/Your" shall mean the mortgagor/borrower on the Note and Mortgage and shall signify the singular or plural, where appropriate, if more than one mortgagor/borrower is executing this document.

Represents Redacted Information

# CARRINGTON
MORTGAGE SERVICES, LLC

1610 E. St. Andrew Place, Santa Ana, CA  92705
(866) 874-5860

## II. TERMS AND CONDITIONS

If your representations and covenants in Section 1 continue to be true in all material respects, then this Loan Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (i.) the Mortgage on the Property, and (ii.) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.  •

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **Representations and Covenants**.  You certify, represent to Lender, covenant and agree:

   A. You are experiencing a financial hardship, and as a result, (i.) you are in default under the Loan Documents or default is imminent, and (ii.) you do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. At least one of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

   C. There has been no impermissible change in the ownership of the Property since you signed the Loan Documents.  A permissible change would be any transfer that the Lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D. You have provided documentation for **all** income that your household receives;

   E. Under penalty of perjury, all documents and information you have provided to the Lender in connection with this Agreement, including the documents and information regarding your eligibility for the Program, are true and correct;

2. **Acknowledgements and Preconditions to Modification.**  You understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 The Lender determines that any of the representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate.  In that event, the Lender will have all of the rights and remedies provided by the Loan Documents.

   B. The Loan Documents will not be modified unless (i.) The Lender receives an executed copy of this Agreement, bearing your signature, on or prior to the last business day of the month following the Effective Date and (ii.) the Modification Effective Date (as defined in Section 3) has occurred.  You further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if you fail to meet any one of the requirements under this Agreement.

   C. You agree that failure to pay the initial payment due on **07/01/12** (the, First Payment Due Date") shall be considered a breach of this Agreement and this Agreement will terminate.  The Lender shall immediately resume any pending foreclosure action or proceeding.  A new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will not be necessary to continue the foreclosure action ("Foreclosure Notices"). You waive any and all rights to receive such foreclosure notices to the extent permitted by applicable law.



1610 E. St. Andrew Place, Santa Ana, CA  92705
**(866) 874-5860**

### III. MODIFICATION TERMS

If your representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 06/01/12  (the "Modification Effective Date").

1. **Upon the Modification Effective Date** your loan will be modified as follows:

    A. The New Principal Balance of your Note will increase by all amounts and arrearages that will be past due as of the Modification Effective Date including unpaid and deferred interest, escrow advances, fees, and other costs in the amount **$0.00** ("Unpaid Amounts") less any amounts paid to the Lender but not previously credited to your Loan.

    B. Your modification includes a reduction of principal balance ("Deferment") in the amount **$260,643.23.** You understand that the Deferment, if any, shall become payable as a Balloon Payment.

    C. The total amount of Write Off included in your modification is **$55,059.14.**  This Write Off amount constitutes a forgiveness of debt and you understand and agree that you will not be required to repay this amount. (Defined in Section I.)

    D. Upon the Modification Effective Date you understand that the new interest bearing principal balance (the "Modified Balance") of your Note will be **$700,000.00** and that interest will begin to accrue on the Modified Balance based on the interest rate in effect under this Agreement which would not happen without this Agreement.

    E. Your modified monthly payment is calculated using a **480 month** amortization period.   You understand that any increase in the amortization period can result in a Balloon Payment.

    F. The Maturity Date of your loan is **10/01/36.**

| CURRENT LOAN TERMS | |
| --- | --- |
| P&I Payment | $5,603.75 |
| Escrow Payment | $90.00 |
| Total Monthly Payment | $5,693.75 |
| Contractual Due Date | 11/01/11 |

| MODIFIED LOAN TERMS | |
| --- | --- |
| P&I Payment | $3,851.50 |
| *Tax Escrow Payment | $0.00 |
| *Insurance Escrow Payment | $90.00 |
| Total Monthly Payment | $3,941.50 |
| First Payment Due Date | 07/01/12 |

| | |
| --- | --- |
| Interest Rate | 7.00000% |

| | |
| --- | --- |
| Interest Rate | 6.00000% |

| | |
| --- | --- |
| Capitalization | $0.00 |
| Additional Deferment | $260,643.23 |
| Write Off | $55,059.14 |
| Modified Balance | $700,000.00 |

| | |
| --- | --- |
| Previous Deferment | $0.00 |

| | |
| --- | --- |
| Principal Balance | $960,643.23 |

| | |
| --- | --- |
| Amortization Period | 360 Months |

| | |
| --- | --- |
| Amortization Period | 480 Months |

# CARRINGTON
MORTGAGE SERVICES, LLC

1610 E. St. Andrew Place, Santa Ana, CA 92705
(866) 874-5860

*Escrow payments may be adjusted periodically in accordance with applicable law and therefore your total monthly payment may change accordingly. Your modified monthly payment may change if your account is subject to an escrow account and analysis for property taxes and insurance premiums. If you did not have an escrow account before, the timing of your tax and insurance bills may require that you make a payment to cover any such bills when they come due. This is known as an escrow shortage and can either be paid in a lump sum **$ 1080.00** when the loan is modified or over the next **24 months** in the amount of **$45.00** per month in addition to your modified monthly mortgage payment.

G.   You understand that your new modified interest rate, described in the above Table, will remain fixed until the original Maturity Date of your loan.

H.   You understand and agree that if you still owe any amounts under the Loan Documents due to any applicable Deferment and / or increase in the amortization period, you will be responsible to pay those amounts as a Balloon Payment (Defined in Section I.)

I.   You understand and agree that by accepting this Loan Modification your credit score may be adversely affected. The impact of a modification on a credit score depends on your entire credit profile.  For more information about your credit score, go to http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

J.   You will be in default if you do not comply with the terms of the Loan Documents, as modified by this Agreement.

## IV. ADDITIONAL AGREEMENTS AND LEGAL NOTICES

1.   You agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   Any fees, costs, advances that are currently due, but have not been billed to your account as of the Modification Effective Date shall be your responsibility to pay and in no way affects this Agreement.

C.   That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that you previously entered into with Lender or any prior lender.

D.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including your agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of your Loan.

E.   That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and you have been advised of the amount needed to fully fund your escrow account.

F.   That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

**CARRINGTON**
MORTGAGE SERVICES, LLC

1610 E. St. Andrew Place, Santa Ana, CA 92705
(866) 874-5860

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and you will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give you notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which you must pay all sums secured by the Mortgage. If you fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on you.

I. That, as of the Modification Effective Date, you understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of your property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

K. That, you will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

L. That you will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. You understand that either a corrected Agreement or a letter agreement containing the correction will be provided to you for your signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If you elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

M. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.



**CARRINGTON**
MORTGAGE SERVICES, LLC

1610 E St Andrew Place, Santa Ana, CA 92705
(866) 874-5860

---

N   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, you will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies you against any loss associated with a demand on the Note. All documents the Lender requests of you under this Section 4.M shall be referred to as "Documents." You agree to deliver the Documents within ten (10) days after you receive the Lender's written request for such replacement.

O   That the mortgage insurance premiums on your Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which you may request cancellation of mortgage insurance may change as a result of the New Principal Balance

In Witness Whereof, the Lender and you have executed this Agreement

CARRINGTON MORTAGE SERVICES, LLC
 As servicer and duly authorized agent for
 WELLS FARGO BANK, N.A., AS TRUSTEE FOR
STANWICH MORTGAGE LOAN TRUST SERIES 2009-2 ASSET BACKED PASS-THROUGH CERTIFICATES

By: _____
     As Attorney in Fact

     DARRALL A GRIFFIN

                                              6-26-12
_____                       Date
Date

                                         _____

                                         _____
                                         Date

_____ [Space Below This Line For Acknowledgement]_____

Page 6 of 6

BK 21627 1898

Prepared by and return to:
Samuel I. White, P.C.
5040 Corporate Woods Drive, Suite 120
Virginia Beach, VA 23462


Griffin

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., **Grantor**, hereby grants, assigns and transfers to **WELLS FARGO BANK, N.A., AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2009-2 ASSET-BACKED PASS THROUGH CERTIFICATES, Grantee**, all beneficial interests under that certain deed of trust dated **September 25, 2006**, executed by **DARRALL A. GRIFFIN** to **GARY FULLER**, Trustees, in the amount of **$915,000.00**, recorded in **Deed Book 18798, at page 0023** in the office of the Clerk of the Circuit Court of the County Of Fairfax, Virginia, describing land therein as: **Lot 13, Kingstowne, Section 42.**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

IN WITNESS WHEREOF, Mortgage Electronic Registration Systems, Inc. has caused this Assignment to be executed in its name by a duly authorized officer and agent, pursuant to authority heretofore granted and not withdrawn as of the date hereof.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By:
Name: TOM CROFT
Assistant Secretary

STATE OF CALIFORNIA
COUNTY OF ORANGE, to-wit:

Before me, the undersigned authority, on this day personally appeared TOM CROFT, Assistant Secretary___, of Mortgage Electronic Registration Systems, Inc. known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed and as the act and deed of said entity and in the capacity therein stated.

Given under my hand and seal this 24 day of MARCH, 2011.

Notary Public                                            (SEAL)

My Commission Expires: 08/21/2013

ELIZABETH GONZALES
Commission # 1861968
Notary Public - California
Los Angeles County
My Comm. Expires Aug 21, 2013

Mortgage Electronic Registration Systems, Inc.                                            1
1-888-679-6377

GPIN/TAX MA

04/08/2011
RECORDED FAIRFAX CO VA
TESTE
CLERK

*BC*

PREPARED BY & RETURN TO:
Citibank, N.A.
388 Greenwich St.,
14th Floor
New York, NY 10013
Parcel # 091-2-12-42-0013

Record and Return to:
Blue Streak Docs
404 S. MLK, Jr. Avenue
Clearwater FL 33756

**Notice of Assignment**

Page 2 of 2

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **WELLS FARGO BANK, N.A., AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2009-2 ASSET-BACKED PASS-THROUGH CERTIFICATES** 1610 E. St. Andrew Place, Santa Ana, CA 92705 (Assignor) by these presents does assign, and set over, without recourse, to **CITIBANK, N.A. AS TRUSTEE FOR CMLTI ASSET TRUST** 388 Greenwich St., 14th Floor, New York, NY 10013 (Assignee) the described mortgage/deed of trust with all interest, all liens, any rights due or to become due thereon, executed by **DARRALL A GRIFFIN** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC. ITS SUCCESORS AND ASSIGNS and GARY FULLER, as trustee.   Said mortgage/deed of trust Dated: 9/25/2006 is recorded in the State of VA, County of Fairfax on 9/29/2006, as Book 18796 Page 0023 **AMOUNT: $ 915,000.00**    Property Address: 5672 TOWER HILL CIR, ALEXANDRIA, VA 22315
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer.
Executed on: *10-26-13*
WELLS FARGO BANK, N.A., AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2009-2 ASSET-BACKED PASS-THROUGH CERTIFICATES
By Carrington Mortgage Services, LLC as Attorney-in-Fact

By: _____

_____ Greg Schleppy, Sr. Vice President

Witness: *Sundar Macarta*

State of California
County of *Orange*
On *10-26-13* Before me, *Irene Torres* personally appeared *Greg Schleppy*, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Notary public *Irene Torres*

IRENE TORRES
COMMISSION #1974461
Notary Public - California
ORANGE COUNTY
My Commission Expires
APRIL 7, 2016

Fairfax                    CMS/AOM/CITIBANK/FBC

Grantor: GRIFFIN, DARRALL
Date/Time: 08/12/2013 11:59:15
Book/Page: 23330/1074
Recorded in FAIRFAX CIRCUIT COURT

TESTE: JOHN T. FREY

Grantee: CITIBANK, NA TR
Instrument: 2018036390.010
# of Pages: 2

# Fairfax County Circuit Court
# CPAN Cover Sheet v2.0

**Instruments**
ASSIGNMENT OF TRUST

**Grantor(s)**
CITIBANK NA_F_N, GRIFFIN, DARRAL A _I_N

**Grantee(s)**
U S BANK NATIONAL ASSOCIATION _F_N

| Consideration | | | Consideration % | | 100 |
|---|---|---|---|---|---|
| Tax Exemption | | | Amount Not Taxed | | |
| DEM Number | | | Tax Map Number | | |
| Original Book | 18798 | | Original Page | | 0023 |
| Title Company | | | | Title Case | ████ |
| Property Descr. | 5672 TOWER HILL CIRCLE, ALEXANDRIA VA 22315 | | | | |
| Certified | No | Copies | 0 | Page Range | |



Loan :
Servicer Loan #

## NOTICE OF CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **CITIBANK, N.A. AS TRUSTEE FOR CMLTI ASSET TRUST, WHOSE ADDRESS IS 388 GREENWICH STREET, 14TH FLOOR, NEW YORK, NY, 10013,** (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 GRANTOR TRUST I, WHOSE ADDRESS IS 60 LIVINGSTON AVE EP-MN-WS3D, ST. PAUL, MN 55107, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust dated 09/25/2006 made by **DARRALL A GRIFFIN** to **GARY FULLER,** trustee, and recorded in Book 18798, Page 0023, Document # 2006030507.001 in the amount of $915,000.00 in the office of the Recorder of (Town/City) ALEXANDRIA, County of FAIRFAX, Virginia.

**IN WITNESS WHEREOF,** this Assignment is executed on ___2__/_14_/2014 (MM/DD/YYYY).
**CITIBANK, N.A. AS TRUSTEE FOR CMLTI ASSET TRUST, by NATIONWIDE TITLE CLEARING, INC,** its Attorney-in-Fact

By: _____
    Nadine Homan
    **VICE PRESIDENT**

All Authorized Signatories whose signatures appear above are employed by NTC and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on ___2__/_14_/2014 (MM/DD/YYYY), by Nadine Homan as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC as Attorney-in-Fact for CITIBANK, N.A. AS TRUSTEE FOR CMLTI ASSET TRUST, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Nicole Baldwin
Notary Public - State of FLORIDA
Commission expires: 08/05/2016

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016

**Prepared By/Return To:**
E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

Grantor: CITIBANK NA
Date/Time: 03/06/2014 09:16:28
Book/Page: 23575/0001
Recorded in FAIRFAX CIRCUIT COURT

TESTE: JOHN T. FREY

Grantee: U S BANK NATIONA
Instrument: 2014009076.027
# of Pages: 2

PREPARED BY & RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092
Parcel ███████████         **Assignment of Deed of Trust**        Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-
S3 GRANTOR TRUST I  60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 (Assignor) by these presents does
assign, and set over, without recourse, to USROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL
ASSOCIATION, AS LEGAL TITLE TRUSTEE  60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 (Assignee)
the described mortgage/deed of trust with all interest, all liens, any rights due or to become due thereon, executed by DARRALL
A GRIFFIN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR MORTGAGE
LENDERS NETWORK USA, INC ITS SUCCESSORS AND ASSIGNS and GARY FULLER, as trustee.   Said mortgage/deed
of trust Dated: 9/25/2006 is recorded in the State of VA, County of Fairfax on 9/29/2006, as Book 18796 Page 0023
Instrument 2006030507.001 AMOUNT: $ 915,000.00  Trustee(s):  GARY FULLER   Property Address: 5672 TOWER
HILL CIRCLE, ALEXANDRIA, VA 22315

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer.
Executed on: August 3, 2015
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 GRANTOR TRUST I  Orion Financial Group,
Inc. Its Attorney in Fact

By: _____          _____
    Melanie A. Arndt, Vice President              Attest: C. Radzai

Grantor: US BANK NATIONAL          Grantee: USROF III LEGAL
DateTime: 08/18/2015 15 06:28      Instrument: 2015031157.010
Book/Page: 242540961              # of Pages: 3          VA Fairfax
Recorded in FAIRFAX CIRCUIT COURT

TESTE: JOHN T. FREY



PREPARED BY & RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092
Parcel #                         **Assignment of Deed of Trust**          Send Any Notices To Assignee.

State of Texas, County of Tarrant
On 08/03/2015, before me, the undersigned, personally appeared Melanie A. Arndt, who acknowledged that he/she is Vice President of/for Orion Financial Group, Inc. Its Attorney in Fact U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 GRANTOR TRUST I and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 GRANTOR TRUST I.

JULIE BACON
MY COMMISSION EXPIRES
November 30, 2018

Notary public, Julie Bacon
My commission expires: November 30, 2018

VA Fairfax                              NBLLC/ USROF II. II/

**Exhibit C**

**MAP #:** ███████

**GRIFFIN DARRALL A**

**5672 TOWER HILL CIR**

## Values

| | |
|---|---|
| Tax Year | 2016 |
| Current Land | $247,000 |
| Current Building | $482,050 |
| Current Assessed Total | $729,050 |
| Tax Exempt | NO |
| Note | |

## Values History

| Tax Year | Land | Building | Assessed Total | Tax Exempt |
|---|---|---|---|---|
| 2016 | $247,000 | $482,050 | $729,050 | NO |
| 2015 | $247,000 | $456,740 | $703,740 | NO |
| 2014 | $247,000 | $464,030 | $711,030 | NO |
| 2013 | $247,000 | $465,200 | $712,200 | NO |
| 2012 | $247,000 | $444,480 | $691,480 | NO |
| 2011 | $247,000 | $434,210 | $681,210 | NO |
| 2010 | $242,000 | $443,070 | $685,070 | NO |
| 2009 | $247,000 | $486,650 | $733,650 | NO |
| 2008 | $274,000 | $522,320 | $796,320 | NO |
| 2007 | $217,000 | $613,200 | $830,200 | NO |
| 2006 | $217,000 | $613,200 | $830,200 | NO |
| 2005 | $152,000 | $547,500 | $699,500 | NO |
| 2004 | $98,000 | $547,500 | $645,500 | NO |
| 2003 | $85,000 | $0 | $85,000 | NO |

Source: Fairfax County Department
of Tax Administration, Real Estate Division.

**Represents Redacted Information**